UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA ADAMS,

     *Plaintiff,*

vs.

40 MARKET STREET, LLC, A/K/A 121-123
MADISON STREET, and 123 MADISON
LLC,

     *Defendants*.

## **COMPLAINT**

Plaintiff, JOSHUA ADAMS (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby files this Complaint and sues Defendants, 40 MARKET STREET A/K/A 121-123 MADISON STREET, and 123 MADISON LLC (hereinafter, "Defendants"), for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., (hereinafter, the "ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter, the "ADAAG").

## **JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181, *et seq*., based upon Defendants' violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

2. The subject property is a diner located on or about 123 Madison St, New York, NY 10002, doing business as Golden Diner (hereinafter, the "Subject Premises").

3. All events giving rise to this lawsuit occurred in the State of New York. Venue is proper in this Court as the Subject Premises are located in the Southern District.

1

**PARTIES**

4.     Plaintiff, JOSHUA ADAMS, is over the age of 18, *sui juris*, and a resident of Brooklyn, New York. Plaintiff was born with spina bifida and Hydrocephalus, and as a result is bound to ambulate in a wheelchair. As such, Plaintiff is a qualified individual under the ADA.

5.     Defendant, 40 MARKET STREET A/K/A 121-123 MADISON STREET, is a domestic limited liability company which is authorized to and does transact business in the State of New York and within this judicial district. Defendant, 40 MARKET STREET A/K/A 121-123 MADISON STREET, is the owner of the Subject Premises.

6.     Defendant, 123 MADISON LLC, is a domestic limited liability company which is authorized to and does transact business in the State of New York and within this judicial district and is the owner/operator of the bar known as "GOLDEN DINER" located at the Subject Premises.

7.     GOLDEN DINER is a popular unique diner that offers classic diner dishes with an Asian flair.  Plaintiff enjoys visiting GOLDEN DINER to enjoy the specialties like Mushroom Reuben Quesadilla, Korean fried chicken wings, and Chinatown eggs and cheese with friends and family.   However, despite Plaintiff's appreciation of the diner, significant accessibility barriers limit their ability to fully enjoy the dining experience, in violation of the ADA.

**FACTUAL ALLEGATIONS AND CLAIM**

8.     Most recently on July 25, 2026, Plaintiff visited the Subject Premises and personally encountered physical barriers to access, which compelled him to engage with those barriers, resulting in legal harm and injury. Plaintiff continues to suffer harm due to the existence of these barriers and the Defendants' failure to comply with ADA regulations.

2

9.      Plaintiff has visited the Subject Premises and intends to return to utilize the goods, services, and accommodations offered to the public. However, he is deterred from returning while the discriminatory barriers and non-compliant policies described herein persist.

10.     Plaintiff has been denied full and equal access to the Subject Premises, preventing him from enjoying the goods and services offered therein. These denials are caused by the physical barriers, including those outlined in this Complaint, and will continue until the barriers are removed.

11.     Pursuant to 42 U.S.C. § 12134(a), the Department of Justice, through the Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register on September 15, 2010. These regulations required public accommodations to comply with the updated standards by March 15, 2012.

12.     Under the "Safe Harbor" provision outlined in 28 CFR § 36.304(d)(2)(i), elements in existing facilities that have not been altered on or after March 15, 2012, and that comply with the technical and scoping specifications of the 1991 Standards are not required to be modified to meet the 2010 Standards. However, the violations described in this Complaint fail to comply with both the 1991 Standards and the 2010 Standards.

13.     The Subject Premises, as a public accommodation and service establishment, is required by law to comply with the ADA and ADAAG. However, it remains non-compliant with these standards.

14.     Plaintiff has suffered harm and injury as a result of personally encountering barriers to access at the Subject Premises, and she will continue to suffer harm due to the Defendants' failure to address the ADA violations described herein.

15.    Plaintiff has experienced direct and indirect injury as a result of the physical barriers and ADA violations at the Subject Premises and the Defendants' actions or inactions in remedying these violations.

16.    Most recently on July 25, 2026, and throughout this year, Plaintiff attempted to access the Subject Premises but was unable to do so due to his disability and the existence of physical barriers, dangerous conditions, and ADA violations that restricted his access to the property and its accommodations.

17.    Plaintiff intends to return to the Subject Premises in the near future to utilize the goods, services, and accommodations offered. However, his ability to do so is restricted by the ongoing physical barriers and ADA violations that limit access for individuals with disabilities.

18.    Plaintiff considers himself a foodie and regularly checks the New York Magazine and Eater. He heard this place had delicious breakfast options and reviewed the feedback online, which was very positive.

19.    Plaintiff often meets friends and family in this neighborhood as it is a vibrant waterfront community with modern cafes and many vintage clothing shops.  It is reachable by public transportation, including the F, B, and D subway lines. It is also very close to Plaintiff, who lives 2.7 miles away.

20.    Plaintiff loves the breakfasts and lunches at the diner and will return this fall and going forward often once it is made accessible.

**COUNT I**
**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**
**(Against All Defendants)**

21.    Plaintiff restates Paragraphs 1-20 as though fully set forth herein.

4

**22.**     Defendants, 40 MARKET STREET A/K/A 121-123 MADISON STREET and 123 MADISON LLC, have discriminated against the Plaintiff and others with disabilities by failing to provide full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Subject Premises, as required by Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36.

**23.**     Defendant, 40 MARKET STREET A/K/A 121-123 MADISON STREET, as the owner of the Subject Premises, is responsible for ensuring that the property complies with the ADA, including removing architectural barriers where readily achievable as required by 42 U.S.C., § 12182(b)(2)(A)(iv).

**24.**     Defendant, 123 MADISON LLC, as the operator of the business located at the Subject Premises, is responsible for ensuring that its policies, practices, and any barriers within its leased space comply with the ADA.

**25.**     The Plaintiff's ability to access the Subject Premises and fully benefit from its goods, services, facilities, privileges, advantages, and accommodations is hindered by various physical barriers, unsafe conditions, and ADA violations, including but not limited to the following:

1) INACCESSIBLE ENTRANCE.
2) EXISTING STEP AT ENTRANCE ACTS AS A BARRIER TO ACCESSIBILITY.
3) REQUIRED RAMP NOT PROVIDED FOR STEP AT ENTRANCE.
   a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.
   b. Accessible routes shall be provided where required by 206.2.
   c. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.
   d. Entrances shall be provided in accordance with 206.4. Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route

complying with 402.

e. Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1).

f. Accessible routes shall comply with 402.

g. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

h. Changes in level shall comply with 303

i. Changes in level greater than ½ inch high shall be ramped and shall comply with 405 or 406.

4) REQUIRED MINIMUM MANEUVERING CLEARANCE NOT PROVIDED AT ENTRANCE DOOR.

5) NON-COMPLIANT CHANGE IN FLOOR LEVEL WITHIN REQUIRED MANEUVERING CLEARANCE AT ENTRANCE DOOR.

a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

b. Accessible routes shall be provided where required by 206.2.

c. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.

d. Entrances shall be provided in accordance with 206.4. Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402.

e. In addition to entrances required by 206.4.2 through 206.4.9, at least 60 percent of all public entrances shall comply with 404.

f. Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1)

g. Minimum maneuvering clearances at doors and gates shall comply with 404.2.4. Maneuvering clearances shall extend the full width of the doorway and the required latch side or hinge side clearance.

h. Floor or ground surface within required maneuvering clearances shall comply with 302. Changes in level are not permitted.

6) RAISED FLOOR SURFACE OF EXTERIOR DINING COMPARTMENT ACTS AS A BARRIER TO ACCESSIBILITY.

a. In restaurants and cafeterias, an accessible route shall be provided to all dining areas, including raised or sunken dining areas, and outdoor dining areas.

b. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

    c. Accessible routes shall comply with 402.

    d. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

    e. Changes in level shall comply with 303

    f. Changes in level greater than ½ inch high shall be ramped and shall comply with 405 or 406.

7) NON-COMPLIANT EXISTING RAMP LEADING TO EXTERIOR DINING COMPARTMENT.

8) NON-COMPLIANT SLOPE OF RAMP LEADING TO EXTERIOR DINING COMPARTMENT EXCEEDS MAXIMUM SLOPE ALLOWANCE.

    a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

    b. Accessible routes shall comply with 402.

    c. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

    d. Ramps on accessible routes shall comply with 405.

    e. Ramp runs shall have a running slope not steeper than 1:12.

9) REQUIRED LANDING WITH MINIMUM FLOOR SPACE  NOT PROVIDED AT TOP OF RAMP LEADING TO EXTERIOR DINING COMPARTMENT.

    a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

    b. Accessible routes shall comply with 402.

    c. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

    d. Ramps on accessible routes shall comply with 405.

    e. Ramps shall have landings at the top and the bottom of each ramp run. Landings shall comply with 405.7.

    f. The landing clear width shall be at least as wide as the widest ramp run leading to the landing.

    g. The landing clear length shall be 60 inches (1525 mm) long minimum.

10) REQUIRED MINIMUM CLEAR WIDTH NOT PROVIDED AT TRAVEL PATH TO DINING TABLES WITHIN EXTERIOR DINING COMPARTMENT

    a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

    b. Accessible routes shall comply with 402.

    c. Accessible routes shall consist of one or more of the following components:

walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

d. Walking surfaces that are a part of an accessible route shall comply with 403.

e. Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches (915 mm) minimum.

11) INACCESSIBLE DINING COUNTER.

12) NON-COMPLIANT HEIGHT OF DINING COUNTER EXCEEDS MAXIMUM HEIGHT ALLOWANCE. REQUIRED MINIMUM KNEE AND TOE CLEARANCE NOT PROVIDED AT DINING COUNTER. PORTION OF DINING COUNTER REQUIRED TO BE ACCESSIBLE NOT PROVIDED.

a. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

b. Dining surfaces and work surfaces shall comply with 902.2 and 902.3.

c. Dining surfaces include, but are not limited to, bars, tables, lunch counters, and booths.

d. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.

e. The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground.

f. Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element.

g. Toe clearance shall be 30 inches (760 mm) wide minimum.

h. Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground.

i. Knee clearance shall be 30 inches (760 mm) wide minimum.

13) REQUIRED MINIMUM CLEAR FLOOR SPACE ALLOWING A FORWARD APPROACH NOT PROVIDED AT DINING COUNTER DUE TO THE POSITIONING OF FIXED FLOOR MOUNTED SEATING.

a. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

b. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.

c. The clear floor or ground space shall be 30 inches (760 mm) minimum by 48 inches (1220 mm) minimum.

14) INACCESSIBLE DINING TABLES.

15) REQUIRED MINIMUM KNEE AND TOE CLEARANCE NOT PROVIDED AT DINING TABLES.

16) A MINIMUM PERCENTAGE OF EXISTING DINING TABLES REQUIRED TO BE ACCESSIBLE NOT PROVIDED.

a.  Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.
b.  Dining surfaces and work surfaces shall comply with 902.2 and 902.3.
c.  A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.
d.  Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element.
e.  Toe clearance shall be 30 inches (760 mm) wide minimum.
f.  Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground.
g.  Knee clearance shall be 30 inches (760 mm) wide minimum.

17)  NON-COMPLIANT DISTANCE OF WATER CLOSET FROM SIDE WALL IN RESTROOM.
a.  The water closet shall be positioned with a wall or partition to the rear and to one side. The centerline of the water closet shall be 16 inches minimum to 18 inches maximum from the side wall or partition

18)  NON-COMPLIANT EXISTING GRAB BAR AT REAR WALL OF WATER CLOSET IN RESTROOM DOES NOT MEET MINIMUM SIZE REQUIREMENT.
a.  The rear wall grab bar shall be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side.

19)  NON-COMPLIANT POSITION OF PLUMBING VALVES LOCATED DIRECTLY BEHIND TOILET SEAT OF WATER CLOSET IN RESTROOM.
a.  If plumbing valves are located directly behind the toilet seat, flush valves and related plumbing can cause injury or imbalance when a person leans back against them. To prevent causing injury or imbalance, the plumbing can be located behind walls or to the side of the toilet; or if approved by the local authority having jurisdiction, provide a toilet seat lid.

20)  INSULATION OF PIPES AND WATER LINES UNDER THE LAVATORY IN RESTROOM NOT PROVIDED AS REQUIRED.
a.  Water supply and drainpipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.

21)  INACCESSIBLE MIRROR IN RESTROOM.
22)  NON-COMPLIANT MOUNTED HEIGHT OF MIRROR IN RESTROOM EXCEEDS MAXIMUM HEIGHT ALLOWANCE.
a.  Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finish floor or ground. Mirrors not located above lavatories or countertops

9

shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm) maximum above the finish floor or ground.

23) NON-COMPLIANT DOORKNOB AT RESTROOM DOOR REQUIRES TWISTING OF THE WRIST.
   a. Doors, doorways, and gates that are part of an accessible route shall comply with 404.
   b. Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4
   c. Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist.  The force required to activate operable parts shall be 5 pounds maximum.

24) NON-COMPLIANT DOOR LOCK AT RESTROOM DOOR REQUIRES PINCHING OF FINGERS.
   a. Doors, doorways, and gates that are part of an accessible route shall comply with 404.
   b. Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4
   c. Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist.  The force required to activate operable parts shall be 5 pounds maximum.

25) INACCESSIBLE COAT HOOK IN RESTROOM.
26) NON-COMPLIANT HEIGHT OF COAT HOOK IN RESTROOM EXCEEDS MAXIMUM HEIGHT ALLOWANCE.
   a. Coat hooks shall be located within one of the reach ranges specified in 308.
   b. Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum, and the low forward reach shall be 15 inches minimum above the finish floor or ground.
   c. Where a high forward reach is over an obstruction, the clear floor space shall extend beneath the element for a distance not less than the required reach depth over the obstruction.  The high forward reach shall be 48 inches maximum where the reach depth is 20 inches maximum.  Where the reach depth exceeds 20 inches, the high forward reach shall be 44 inches maximum, and the reach depth shall be 25 inches maximum.
   d. Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches maximum, and the low side reach shall be 15 inches minimum above the finish floor or ground.
   e. Where a clear floor or ground space allows a parallel approach to an element and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum, and the depth of the obstruction shall be 24 inches maximum.  The high side reach shall be 48 inches maximum for a reach depth of 10 inches maximum.  Where the reach depth exceeds 10 inches, the high side reach shall be 46 inches maximum for a reach depth of 24 inches maximum.

26.     Plaintiff has attempted to access the Subject Premises but has been denied full and equal enjoyment of the goods, services, programs, and activities offered due to his disability. The physical barriers, dangerous conditions, and ADA violations described above have caused Plaintiff to suffer harm, and Plaintiff reasonably expects to face continued discrimination unless and until Defendants are compelled to remove these barriers and comply with the ADA.

27.     Plaintiff lives approximately 2.7 miles from the Subject Premises and regularly frequents the surrounding area and nearby boroughs, including Bronx, Queens, Brooklyn, and Manhattan, on a weekly basis for dining, shopping, errands, recreation, and visiting businesses open to the public. Plaintiff intends to return to the Subject Premises within the next six (6) months to avail himself of the goods and services offered therein if the Subject Premises are made accessible to individuals with mobility disabilities.

28.     The removal of the physical barriers, dangerous conditions, and ADA violations described herein is readily achievable and can be accomplished without significant difficulty or expense, as defined by 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R. § 36.304.

29.     Plaintiff is without an adequate remedy at law and is suffering irreparable harm. Plaintiff reasonably anticipates continued harm unless Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations at the Subject Premises.

### **RELIEF SOUGHT**

30.     Plaintiff seeks an injunction requiring Defendants to bring the Subject Premises into full compliance with the ADA and ADAAG by remediating all violations.

31.     Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the Subject Premises to make it readily

accessible to and usable by individuals with disabilities to the extent required by the ADA, and closing the Subject Premises until the requisite modifications are completed.

32.    Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants, pursuant to 42 U.S.C., §§ 12205 and 12217.

WHEREFORE, Plaintiff respectfully requests that the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices, ordering Defendants to remove the physical barriers to access and alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the Subject Premises until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs, and litigation expenses incurred in this action.

August 12,2026                                 Respectfully submitted,


                                               /s/ Jennifer E. Tucek, Esq.
                                               Law Office of Jennifer Tucek, PC
                                               Bar No. JT2817
                                               641Lexington Avenue, 15th Floor
                                               New York, New York 10017
                                               (917) 669-6991
                                               TucekLaw@Gmail.com
                                               Attorney for Plaintiff